**UNITED STATES DISTRICT COURT**
**FOR THE NORHTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| IVELISSE MALAVE, on behalf of herself and all others similarly situated | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Plaintiff | |
| vs. | **Index No.** 3:17-CV-816[LEK/DEP] |
| GAULT AUTO MALL, INC.; GAULT CHEVROLET, INC.; and ROBERT GAULT AND CONNIE GAULT, individually and in their capacities as owners and/or officers of GAULTO AUTO MALL, INC. and/or GAULT CHEVROLET, INC. | |
| Defendants | |

---

## NATURE OF ACTION

1.    This is a proceeding for relief to redress the deprivation of rights secured to Plaintiff individually, as well as all other employees similarly situated, under the Fair Labor Standards Act of 1938 ("FLSA") and the New York Labor Law ("NYLL") (collectively the "Class Members").

## JURISDICTION & VENUE

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1337; 28 U.S.C. § 1343 (3) and (4); and 29 U.S.C. § 216(b).

3.    This Court's supplemental jurisdiction of claims arising under New York State Law is also invoked, pursuant to 28 U.S.C. § 1367.

4.    Venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391(b).

PARTIES

Plaintiff

*Named Plaintiff*

5. Plaintiff Ivelisse Malave ("Malave") is an individual residing in the Town of Vestal, County of Broome, and State of New York, who was employed by Defendants at their location(s) on North Street in Endicott, New York from approximately October, 2013 through May, 2015, and August, 2016 through February, 2017, and who at all relevant times was an employee of Defendants' for purposes of both the FLSA and NYLL, within this District.

6. Malave was classified by Defendants, during her employment, as exempt from the overtime requirements of both the FLSA and NYLL.

7. Malave worked as a Service Advisor for Defendants at several of their automotive dealerships, all of which are located in close vicinity to one another on North Street in Endicott, New York. The approximate dates that Malave worked at the various dealerships are:

October, 2013 – August, 2014 in the Toyota dealership. Malave's job title at this time was sometimes referred to as Toyota Service Manager, or TSM.

August, 2014 – November, 2014 in the Volkswagen dealership.

November, 2014 – April, 2015 in the Chevrolet dealership.

August, 2016 – February, 2017 in the Toyota dealership. Malave's job title at this time was sometimes referred to as Toyota Service Manager, or TSM.

8. Malave was paid a monthly salary of approximately $625.00, plus commission on sales of automotive services using a formula determined by Defendants. Malave

2

was also paid a draw, based upon the number of days worked, which draw was deducted from the total of commissions and salary when reconciled on a monthly basis. A copy of a monthly reconciliation given to Malave by Defendants for January 2017 is attached hereto.

9.      Malave was routinely scheduled by Defendants, and in fact worked, more than forty hours in a single work week. Examples of schedules set by Defendants and worked by Malave include:

October, 2013 – August, 2014 (Toyota) alternating weeks of:

Week 1: Monday through Friday 7:00 a.m. until 5:00 p.m., except Thursday 7:00 a.m. until 7:00 p.m., for a total of 52 hours, less one hour each day for lunch, resulting in 47 hours worked.

Week 2: Monday, Tuesday, Wednesday, Friday 7:00 a.m. until 5:00 p.m. and Saturday 7:00 a.m. until 4:00 p.m., for a total of 49 hours, less one hour each day for lunch, resulting in 44 hours worked.

The approximate number of hours worked during this period is 2168, of which 262 were overtime hours.

August, 2014 – November, 2014 (Volkswagen) Monday through Friday 7:00 a.m. until 5:00 p.m. for a total of 50 hours, less one hour each day for lunch, resulting in 45 hours worked.

The approximate number of hours worked during this period is 3120, of which 347 were overtime hours.

November, 2014 – April, 2015 (Chevrolet) alternating weeks of:

3

Week 1: Monday through Friday 7:00 a.m. until 5:00 p.m., for a total of 50 hours, less one hour each day for lunch, resulting in 45 hours worked.

Week 2: Monday through Friday 7:00 a.m. until 5:00 p.m., and Saturday 7:00 a.m. until 12:00 p.m., for a total of 55 hours, less one hour each day Monday through Friday for lunch, resulting in 50 hours worked.

The approximate number of hours worked during this period is 3705, of which 585 were overtime hours.

August, 2016 – February, 2017 (Toyota) alternating weeks of:

Weeks 1 & 2: Monday through Friday 7:00 a.m. until 5:00 p.m., except Thursday 7:00 a.m. until 7:00 p.m., for a total of 52 hours, less one hour each day for lunch, resulting in 47 hours worked.

Week 3: Monday, Tuesday, Wednesday, Friday 7:00 a.m. until 5:00 p.m. and Saturday 7:00 a.m. until 4:00 p.m., for a total of 49 hours, less one hour each day for lunch, resulting in 44 hours worked.

The approximate number of hours worked during this period is 3746, of which 453 were overtime hours.

10.   At all times, Plaintiff's work schedule was posted on a calendar maintained by Defendants.

11.   At all times Plaintiff was required to clock in and out for all time worked.

12.   At all times, lunch breaks were scheduled and determined by Defendants.

*Class Members*

13.   The Class Members are those employees of Defendants who were employed, classified, and paid in a manner similar to that of Plaintiff, and as a result of

4

which were suffered or permitted to work by Defendants and not paid their statutorily required rates of pay for all hours worked.

14.     Specifically, Defendants' practice and policy is to pay Plaintiff and Class Members a small monthly salary plus commission, without regard to the number of hours worked. Defendants required Plaintiff and Class Members to work in excess of forty hours per workweek on Defendants' premises, but paid them for those hours at a salary plus commission basis, and not at a rate at least one and one-half times their legally-determined regular rate for overtime hours, as is required by the FLSA and NYLL.

Defendants

15.     Defendant Gault Auto Mall, Inc. ("Gault Auto Mall") is a New York corporation with principal offices and location(s) in the County of Broome and State of New York.

16.     Upon information and belief, Gault Auto Mall owns and/or operates automobile dealerships in this District, including the one at which Plaintiff worked.

17.     Defendant Gault Chevrolet, Inc. ("Gault Chevrolet") is a New York corporation with principal offices and location(s) in the County of Broome and State of New York.

18.     Upon information and belief, Gault Chevrolet owns and/or operates automobile dealerships in this District, including the one at which Plaintiff worked.

19.     Upon information and belief, Robert Gault is an owner of Gault Auto Mall and/or Gault Chevrolet, and substantially involved in the control, and/or day-to-day operations, of Gault Auto Mall and/or Gault Chevrolet.

20.    Examples of Robert Gault's involvement in the day-to-day operations include: spending a significant amount of time at the facilities at which Plaintiff worked; frequently asking questions of employees, including Plaintiff; giving specific instructions to employees, including Plaintiff; and making direct decisions concerning compensation, hiring and firing of employees.

21.    Upon information and belief, Connie Gault is an owner of Gault Auto Mall and/or Gault Chevrolet, and substantially involved in the control, and/or day-to-day operations, of Gault Auto Mall and/or Gault Chevrolet.

22.    Examples of Connie Gault's involvement in the day-to-day operations include: spending a significant amount of time at the facilities at which Plaintiff worked; frequently asking questions of employees, including Plaintiff; giving specific instructions to employees, including Plaintiff; and making direct decisions concerning compensation, hiring and firing of employees.

23.    Defendants' managers and supervisors frequently gave orders and directions to Plaintiff and Class Members and represented them as coming directly from Robert and/or Connie Gault.

24.    The automotive dealerships owned and/or operated by Defendants during all or for a portion of the relevant period include Toyota, Volkswagen, Chevrolet and/or BMW (collectively the "Dealerships").

25.    The Dealerships are located adjacent to or immediately near one another.

26.    For Defendants' BMW brand, vehicle sales are done from a separate building, but parts and service are housed with the Chevrolet brand.

27.    The Dealerships operate as one enterprise and employees routinely work at more than one. Employees that move from one Dealership to another maintain their seniority.

28.    At all times that Plaintiff worked for Defendants, regardless of at which Dealership, her paychecks were issued by Gault Chevrolet.

29.    At all times relevant to this action, Gault Auto Mall is/was the employer of Plaintiff and Class Members within the meaning of both the FLSA and NYLL.

30.    At all times relevant to this action, Gault Chevrolet is/was the employer of Plaintiff and Class Members within the meaning of both the FLSA and NYLL.

31.    At all times relevant to this action, Robert Gault is/was the employer of Plaintiff and Class Members within the meaning of both the FLSA and NYLL.

32.    At all times relevant to this action, Connie Gault is/was the employer of Plaintiff and Class Members within the meaning of both the FLSA and NYLL.

## CLASS ACTION ALLEGATIONS

33.    The Class consists of current and former employees of Defendants' who were injured by Defendants' illegal practice of refusing to pay them for hours worked in excess of forty at a rate at least one and one-half times their regular hourly rate.

34.    Common questions of fact and law predominate in this action because the claims of both Plaintiff and Class Members are based on whether Defendants' policies of not paying an overtime premium violates the law.

35.    The class size is believed to be in excess of 50 current and former employees.

36.    Plaintiff will adequately represent the interests of the Class Members because she
is similarly situated to the Class Members and her claims are typical of, and
concurrent to, the claims of the other Class Members.

37.    There are no known conflicts of interest between Plaintiff and other Class
Members.

38.    The Class Counsel, Ferr & Mullin, P.C., is qualified and able to litigate the claims
of Plaintiff and Class Members.

39.    The claims arising under the New York Labor Law are maintainable as a class
action under Federal Rule of Civil Procedure 23(b), subsection (3), because
common questions of fact and law predominate among Plaintiff and the Class
Members, and the class action is superior to other available methods for the fair
and efficient adjudication of the controversy.

FACTUAL ALLEGATIONS

40.    Gault Auto Mall and/or Gault Chevrolet are in the business of selling
automobiles, servicing and repairing automobiles, and selling automotive parts
and accessories.

41.    Plaintiff's employment with Defendants consisted of meeting with customers who
brought their vehicles in for service, receiving their vehicles and performing
administrative tasks, and attempting to sell additional services to those customers.

42.    As stated above, Plaintiff worked in excess of forty hours virtually every
workweek during her employment with Defendants.

43.    The records and documents showing the exact times and dates of Plaintiff's
employment are in the control of Defendants.

8

44. The method for determining the pay the Plaintiff should have received for a given workweek is to multiply Plaintiff's regular rate by forty, Plaintiff's overtime rate by the number of overtime hours worked, and add those two products together.

45. The method for determining Plaintiff's regular rate for a given workweek is to total all compensation earned by Plaintiff, including salary and commissions, in that given workweek and divide by forty. The method for determining Plaintiff's overtime rate for the same given workweek is to multiply the regular rate for that workweek by 1.5.

46. Plaintiff's damages for any given workweek can be calculated by calculating the regular and overtime rates as described above, multiplying them by forty and the number of overtime hours, respectively, adding the two products together, and subtracting the amount actually paid to Plaintiff by Defendants.

47. The records and information necessary to fully calculate the exact damages owed to Plaintiff by Defendants are in the possession of Defendants.

48. By way of example only, in January of 2017, Plaintiff earned approximately $3,087.72, and worked approximately 182 hours. Based on an average of four weeks, Plaintiff's regular rate for this period was $19.30 and her regular rate was $28.95. The total of regular hours worked was 160, and overtime 22. Thus, Plaintiff should have been paid $3,087.72 for regular hours and $636.84 for overtime, for a total of $3,724.56. Plaintiff was actually paid $3,087.72, so her estimated damages for January 2017 are $636.84, exclusive of liquidated damages, interest, etc.

49. Based upon the above estimate for January 2017, without the benefit of the records possessed by Defendants that are necessary to calculate the exact amount, and extrapolating it over the entire period Plaintiff worked for Defendants, Plaintiff's total damages are approximately $40,757.00, exclusive of liquidated damages, interest, etc.

50. Plaintiff is unable to calculate the exact amount of wages or damages owed because the necessary records are in the possession of Defendants.

## FIRST CAUSE OF ACTION: FLSA

51. Plaintiff and Class Members reallege the above paragraphs as if fully restated herein.

52. Defendants have knowledge of their responsibilities and obligations under the FLSA.

53. Defendants have failed to make, keep and preserve true and accurate records of the hours worked by Plaintiff and Class Members, in violation of the FLSA.

54. Defendants violated their obligations under the FLSA and are liable to Plaintiff and Class Members.

55. Further, Defendants' violations of their obligations under the FLSA were willful.

## SECOND CAUSE OF ACTION: NEW YORK LABOR LAW

56. Plaintiff and Class Members reallege the above paragraphs as if fully restated herein.

57. Defendants have knowledge of their responsibilities and obligations under the NYLL.

10

58.  Defendants have failed to provide notices to Plaintiff and Class Members as required by the New York Labor Law.

59.  Defendants failed to pay all wages due to Plaintiff and Class Members on regular days designated in advance pursuant to New York Labor Law.

60.  Defendants have failed to make, keep and preserve true and accurate records of the hours worked by Plaintiff and Class Members, in violation of the New York Labor Law.

61.  Defendants have willfully violated the New York Labor Law, and the supporting regulations issued by the New York State Department of Labor, with respect to their obligations to Plaintiff and Class Members.

PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and Class Members demand judgment against Defendants, and respectfully request that this Court grant the following relief:

    a.   an award crediting Plaintiff and Class Members for all hours worked, at the appropriate hourly rates;

    b.   an award of the value of the value of Plaintiff's and Class Members' unpaid hourly wages;

    c.   liquidated damages under the FLSA and NYLL equal to the sum of the amount of wages not properly paid to Plaintiff and Class Members;

    d.   an award of reasonable attorneys' fees, expenses, expert fees, and all other costs incurred in vindicating the rights of Plaintiff and Class Members;

    e.   an award of pre- and post-judgment interest;

    f.   the amount equal to the value which would make Plaintiff and Class Members whole for the violations; and

    g.   such other and further relief as this Court deems necessary and proper.

DEMAND FOR TRIAL BY JURY

    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and Class Members demand a trial by jury on all questions of fact raised by the Complaint.

Dated:  July 25 2017               /s/ _____
                                      Robert Mullin
                                      Ferr & Mullin, P.C.
                                      Attorneys for Plaintiff
                                      7635 Main St. Fishers
                                      P.O. Box 440
                                      Fishers, NY 14453
                                      t (585) 869-0210
                                      f (585) 869-0223

**Gault AutomotiveTeam Service Manager Pay Plan**

| TSM | Ive Malave | Month | Janurary 2017 |
|-----|-----------|-------|---------------|

**Salary**    (per month (responsibility to department as a whole)        $625.00

**Service and Parts Gross Profit.**
From Reynolds 3611 and DT Service Writer Sales Report

| | | | | |
|---|---|---|---|---|
| Combined Serv and Pts GP$ | 37817.91 at | | 4.00% | $1,512.72 |
| | Body mechanical hours | 0 at | $1.75 | $0.00 |
| | vac avg | 0 at | $65.93 | $0.00 |
| | pdi paid in gp$ | | Combined | $1,512.72 |

Team GP  | 15603.37+60032.45=75635.82/2=37817.91 |

**Service Process Completion**    (from attached Service Writer Repair order Review)
80% = $50.00        90% = $150.00        98% = 350.00
85% = $75.00        95% = $275.00            100%    $350.00

**MPI Completion percentage**                100%
From Daily RO review.

Bonus from Chart by percentage        $350.00

**Open Repair Orders**
$50.00 if no orders open more than five business days at EOM.        $50.00

**CSI Bonus**

| | | | | |
|---|---|---|---|---|
| | | | 2+above zone | $500.00 |
| Ive | 92.28% | Adjusted RO 1309 | above zone | $200.00 |
| D10 | 92.94% | | at zone | $100.00 |
| | -0.66% | | below Zone | $0.00 |
| | | | **CSI Bonus** | $0.00 |

| RO with Inspection %. | | | | | |
|---|---|---|---|---|---|
| 80% | 350 | 4 week month | **Total bonus for month** | | $2,887.72 |
| 70% | 250 | | 500/week | | |
| 60% | 200 | less | 19 days draw | 100 | $1,900.00 |
| 50% | 150 | | 1 Holiday | 100 | $100.00 |
| 40% | 100 | | 0 days vacation | 100 | $0.00 |
| 30% | 50 | | 0 days no pay | 100 | $0.00 |
| 20% | 0 | (draw is based on number of Saturdays in month) | | | |
| | | | balance | | $1,087.72 |

Effective 3/1/2014