IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

IVELISSE MALAVE, on behalf of
herself and all others similarly
situated,

                  Plaintiff,           Civil Action No.
                                       3:17-CV-0816 (LEK/DEP)

          v.

GAULT AUTO MALL, INC., *et al.*,

                  Defendants.

_____

APPEARANCES:                   OF COUNSEL:

FOR PLAINTIFF:

FERR & MULLIN, P.C.          ROBERT L. MULLIN, JR., ESQ.
7635 Main St. Fishers
P.O. Box 440
Fishers, NY 14453

FOR DEFENDANTS:

NOLAN KLEIN, P.A.            NOLAN K. KLEIN, ESQ.
39 Broadway, Suite 2250      VALERIE K. FERRIER, ESQ.
New York, NY 10006

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

This is an action brought by plaintiff Ivelisse Malave arising out of her former employment with defendants' automobile dealerships. In her complaint, she alleges that defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL") § 650 *et seq.*, through their misclassification of her job and those of others similarly situated as exempt from state and federal overtime laws and their concomitant failure to properly compensate those employees for time over forty hours worked in a given work week.

Currently pending before the court are three motions. Plaintiff initiated the motion process by seeking certification of the matter as a collective action under the FLSA.[1] That motion was followed by cross-motions of the parties, each seeking the entry of summary judgment. For the reasons set forth below, I recommend that defendants' summary judgment motion be granted, and plaintiff's complaint be dismissed.

---

[1]     Although her counsel has indicated an intention to do so in the future, plaintiff does not yet seek class certification with respect to her NYLL claims under Rule 23 of the Federal Rules of Civil Procedure.

I.    BACKGROUND[2]

Defendants Gault Auto Mall, Inc. ("Gault Auto Mall") and Gault

Chevrolet, Inc. ("Gault Chevrolet") are New York corporations that own

and operate automobile dealerships in Broome County, New York.[3] Dkt.

No. 1 at 5-6; Dkt. No. 19-1 at 1. Those two companies also provide

automobile parts and services, but do not engage in any manufacturing.

Dkt. No. 19-1 at 1. In her complaint, plaintiff alleges that defendants

Robert Gault and Connie Gault are the owners of Gault Auto Mall and/or

Gault Chevrolet and are substantially involved in the operations of those

entities. Dkt. No. 1 at 5-6.

From approximately October 2013 through May 2015, and again

from about August 2016 through February 2017, plaintiff was employed by

defendants as a service advisor and at various times was assigned to

---

[2]       In light of the procedural posture of the case, the following recitation is derived
from the record now before the court, with all inferences drawn and ambiguities
resolved in the non-movant's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).
In this case, in light of the parties' cross-motions for summary judgment, the court
draws "all factual inferences . . . against the party whose motion is under
consideration." *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005)
(quotation marks omitted).

[3]       The corporate structure and relationship between the two corporate defendants
is not clear from the record now before the court.

work in their Toyota, Volkswagon, and Chevrolet dealerships.[4] Dkt. No. 1

at 2-3; Dkt. No. 15-3 at 1. In that position, plaintiff's duties were performed

pursuant to a job description signed by plaintiff and a representative of

defendants on October 9, 2013. *See* Dkt. No. 16-4. That job description

specified that as a service advisor, plaintiff acted as a liason between

mechanics at the dealership and customers with respect to vehicles

serviced there. *Id.* In that capacity, she met with customers, received their

vehicles, performed administrative intake tasks, and attempted to sell

additional vehicle services to those customers. *Id.; see also* Dkt. No. 15-3

at 2. Plaintiff was also responsible for writing repair orders, following up on

service repairs, and providing customers with estimates of repair costs.

Dkt. No. 16-4.

In her position, plaintiff was not compensated based upon the

number of hours worked. Dkt. No. 15-3 at 2. Instead, she was paid a

monthly base salary of $625.00 plus commissions on the sales of

automotive services using a formula determined by defendants. *Id.*; *see*

*also* Dkt. No. 1 at 2. In addition, she was also advanced weekly draws,

---

[4]     During some of the time that plaintiff worked at the Toyota dealership her job
title was "Toyota Service Manager." Dkt. No. 15-3 at 1. In that position, however, her
duties were the same as those performed as a service advisor. *Id.*

calculated based on the number of days that she worked, and those draws were then deducted from her total commissions and salary when reconciled on a monthly basis.[5] Dkt. No. 1 at 2-3, 13; Dkt. No. 15-3 at 2. Despite the fact that she routinely worked in excess of forty hours per week, plaintiff was not paid overtime for hours worked in excess of forty hours in a single work week. Dkt. No. 15-3 at 2.

In her complaint, plaintiff claims that she was misclassified as an exempt employee in violation of the FLSA and NYLL, and that if properly regarded as a non-exempt employee and paid on an hourly basis, including for overtime, she would be owed approximately $40,757.00, exclusive of liquidated damages, interest, costs, and attorney's fees. Dkt. No. 1 at 10. Plaintiff further alleges that defendants' violations of the FLSA and NYLL were willful. *Id.* at 10-11.

II.   PROCEDURAL HISTORY

Plaintiff commenced this action on July 25, 2017. Dkt. No. 1. Plaintiff's complaint is styled as a class action, purporting to assert claims "on behalf of herself and all others similarly situated." *Id.* In her complaint,

---

[5]   By way of example, during January 2017, plaintiff's total monthly bonus was $2887.72; that amount included her monthly salary of $625.00. Dkt. No. 1 at 13; Dkt. No. 15-3 at 3. From that amount, defendants subtracted $1900.00 for weekly draws previously taken, and paid plaintiff the remaining $1087.72, which may have included $100.00 in holiday pay. *Id.*

plaintiff sets forth claims under the FLSA and NYLL and alleges that the violations were willfully committed by defendants. *Id.* Issue was joined on August 30, 2017, by the filing of an answer on behalf of defendants generally denying the material allegations of plaintiff's complaint. Dkt. No. 5.

On November 24, 2017, plaintiff moved to conditionally certify the matter as a collective action under the FLSA. Dkt. No. 15. Defendants responded on November 27, 2017, with opposition papers in which they argue that plaintiff's position was exempt from the overtime provisions of the FLSA, and that her motion for conditional collective action certification should be denied.  Dkt. No. 16. In addition, defendants have also sought the entry of summary judgment dismissing plaintiff's FLSA claim, and declining to exercise supplemental jurisdiction over her NYLL cause of action. *Id.* Plaintiff has since opposed defendants' motion for summary judgment and cross-moved for summary judgment in her favor finding that defendants violated the FLSA by failing to pay her overtime compensation. Dkt. No. 18. Now that defendants have responded in opposition to plaintiff's motion for summary judgment and in further support of their summary judgment motion, Dkt. No. 19, the parties' motions are fully briefed and ripe for determination

The parties' motions have been referred to me for consideration by Senior District Judge Lawrence E. Kahn. Oral argument in connection with the motions was heard on January 3, 2018, at which time decision was reserved.

III.    DISCUSSION

A.    Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Emp'rs' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

In a case such as this, where the parties have filed cross-motions for summary judgment, "a court must evaluate each party's motion on its own

merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Boy Scouts of Am. v. Wyman*, 335 F.3d 80, 88 (2d Cir. 2003) (quotation marks omitted).

B.    Analysis of Plaintiff's FLSA Overtime Claim

In general, "section 207(a)(1) of the FLSA requires that 'for a workweek longer than forty hours,' an employee working 'in excess of' forty hours shall be compensated for those excess hours 'at a rate not less than one and one-half times the regular rate at which [she or] he is employed.'" *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 86 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)). The FLSA contains several express statutory exemptions from this overtime payment requirement.[6] 29 U.S.C. § 213(b). In light of the remedial purposes of the FLSA, its statutory exemptions are to be narrowly construed, and the burden of proving that a specific exemption applies rests with the employer. *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010); *see Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960) (employers seeking to assert exemption must show that exemption claimed applied "plainly and unmistakably"). "To extend an exemption to other than those plainly and

---

[6]    Those exemptions are incorporated into parallel overtime provisions of the NYLL. *See* 12 N.Y.C.R.R. § 142–3.2; *see also Reiseck,* 591 F.3d at 104.

unmistakably within its terms and spirit is to abuse the interpretative

process and to frustrate the announced will of the people." *A.H. Phillips,*

*Inc. v. Walling*, 324 U.S. 490, 493 (1945).

The decision of whether an FLSA exemption applies presents a

mixed question of law and fact. *Myers v. Hertz Corp.*, 624 F.3d 537, 548

(2d Cir. 2010). That determination hinges in significant part upon the

question of how an employee spends his or her time, an inquiry that is

uniquely factual in nature; the issue of whether such activities render the

employee exempt from the FLSA's overtime provisions, on the other hand,

presents a question of law. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S.

709, 714 (1986).

The FLSA exemption implicated in this case excludes from the Act's

overtime provisions

> any salesman, partsman, or mechanic primarily
> engaged in selling or servicing automobiles, trucks,
> or farm implements, if he is employed by a
> nonmanufacturing establishment primarily engaged
> in the business of selling such vehicles or
> implements to ultimate purchasers.

29 U.S.C. § 213(b)(10)(A). To meet the requirements of section

213(b)(10)(A), an employer must establish that (1) the employee is either

a salesman, partsman, or mechanic; (2) such salesman, partsman, or

mechanic is "primarily engaged in selling or servicing" the vehicles set

forth in the statute, and (3) such salesman, partsman, or mechanic's employer is a "nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers." *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F.Supp.2d 383, 387-88 (E.D.N.Y. 2010) (quoting 29 U.S.C. § 213(b)(10)(A)); *see Buehlman v. Ide Pontiac, Inc.*, No. 6:15-CV-6745, 2016 WL 6581757 (W.D.N.Y. Nov. 7, 2016); *Williams v. Skyline Auto. Inc.*, No. 11-CV-4123, 2012 WL 1948774 (S.D.N.Y. May 30, 2012); *see also* Dkt. No. 16-1 at 2-3; Dkt. No. 18 at 7.

Of the foregoing three elements, the third does not appear to be seriously in dispute. While in their initial motion defendants did not submit evidence concerning this issue, in their reply papers they have included a declaration from David Bellnap, the Fixed Operations Manager for defendants, in which he states that defendants' primary business is the sale of automobiles to customers, and that those sales represent the principal source of defendants' income. Dkt. No. 19-1. Although critical of defendants for not including such evidence in their initial submission, during oral argument plaintiff acknowledged that it was likely defendants could meet this third element. Plaintiff, however, contests that she was either a salesman, partsman, or mechanic, or that she was primarily engaged in selling or servicing automobiles.

The position of the Department of Labor ("DOL") in addressing this issue can best be described as schizophrenic. In 1970 the agency offered an interpretive regulation defining a salesman as "an employee who is employed for the purpose of and is primarily engaged in making sales or obtaining orders or contracts for sale of the automobiles, trucks, or farm implements that the establishment is primarily engaged in selling."[7] 29 C.F.R. § 779.372(c)(1) (1971). Those regulations went on to explicitly exclude service advisors who sell repair and maintenance services, but not vehicles themselves. *Encino Motor Cars, LLC v. Navarro*, 136 S. Ct. 2117, 2122 (2016). The applicable portion of the 1970 regulations specifically provided as follows:

> Employees variously described as service manager, service writer, service advisor, or service salesman who are not themselves primarily engaged in the work of a salesman, partsman, or mechanic as described above are not exempt under section 13(b) (10). This is true despite the fact that such an employee's principal function may be [diagnosing] the mechanical condition of vehicles brought in for repair, writing up work orders for repairs authorized by the customer, assigning the work to various employees and directing and checking on the work of mechanics.

---

[7]     Under the regulations the term "primarily engaged" is defined to mean "the major part or over 50 percent of the salesman's . . . time must be spent in selling or servicing the enumerated vehicles." 29 C.F.R. § 779.372(d).

29 C.F.R. § 779.372(c)(4) (1971).

Despite the plain language of the DOL regulation, the courts, led initially by the Fifth Circuit Court of Appeals in *Brennan v. Deel Motors, Inc.*, 475 F.2d 1095, 1096 (5th Cir. 1973), almost uniformly have rejected the DOL's position and held that service advisors are exempt from the overtime provisions of the FLSA. *Navarro,* 136 S. Ct. at 2123; *see Brennan*, 475 F.2d at 1096; *Walton v. Greenbrier Ford, Inc.*, 370 F.3d 446, 453 (4th Cir. 2004); *Yenney v. Cass Cty. Motors Co.*, No. 76-0-294, 1977 WL 1678, at *2-*3 (D. Nev. Feb. 8, 1977); *Brennan v. Imp. Volkswagon, Inc.*, No. W-4982, 1975 WL 1248, at *2 (D. Kan. Oct. 21, 1975); *Brennan v. N. Bros. Ford, Inc.*, No. 40344, 1975 WL 1074, at *3 (E.D. Mich. Apr. 17, 1975), *aff'd sub nom., Dunlop v. N. Bros. Ford, Inc.*, 529 F.2d 524 (6th Cir. 1976).

The position of the various courts having considered the issue was ultimately adopted by the DOL in 1978 through the issuance of an opinion letter reversing course and acknowledging that the letter represented a departure from the position set forth in section 779.372(c)(4) of the regulations. *Id.* This new policy was reiterated in 1987 when the DOL Field Operations Handbook was amended to clarify that service advisors should be treated as exempt under section 213(b)(10)(A). *Id.*

In 2008, the DOL issued a notice of proposed rulemaking observing that the courts having considered the question had been unanimous in holding service advisors to be exempt under section 213(b)(10)(A), and that the agency itself had treated service advisors as exempt since 1987, and accordingly, proposing to revise its formal regulations to include service advisors within the section 213(b)(10)(A) exemption. *Navarro*, 135 S. Ct. at 2123. The DOL reversed course yet again, however, in 2011, announcing that it was not proceeding with the proposed rule. *Id.*; 76 Fed. Reg. 18833. The agency instead issued a final rule following the original 1970 regulation and interpreting the statutory term "salesman" to mean only an employee who sells automobiles, trucks, or farm implements. *Id. Navarro*, 136 S. Ct. at 2123; *see* 76 Fed. Reg. 18859. The change in position was relatively unceremonious, and came with little explanation. *Id.*

The history of the DOL's position concerning this issue was addressed by the Supreme Court in its decision in *Navarro*. That case involved service advisors employed by a Mercedes-Benz dealership operated by the defendants. *Navarro*, 136 S. Ct. at 2124. A suit brought by the service advisors claiming that their employer failed to pay them overtime as required under the FLSA was dismissed by the district court based upon a finding that the exemption of § 213(b)(10)(A) should apply.

14

*Id.* The district court's determination was reversed by the Ninth Circuit

Court of Appeals, which found that the DOL regulation, which concluded

that service advisors were not encompassed within the scope of the

exemption, was entitled to deference under *Chevron U.S.A., Inc. v.*

*Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Id.* After

reviewing the DOL's checkered history concerning the issue and

concluding that the DOL did not provide a reasonable explanation for its

about face, on *certiorari* review the Supreme Court concluded that the

exemption set forth in section 213(b)(10)(A) should be construed without

affording *Chevron* deference to the DOL's 2011 regulation and, since the

Ninth Circuit's decision relied on the new regulation, remanded the matter

for further consideration.[8] *Navarro*, 136 S. Ct. at 2127.

On remand, the Ninth Circuit again concluded that the exemption

contained in the section 213(b)(10)(A) did not encompass service

advisors. *Encino Motorcars, LLC v. Navarro*, 845 F.3d 925, 939-40 (9th

Cir. 2017), *cert. granted*, 138 S. Ct. 54 (2017). In that regard, the Ninth

Circuit's decision stands alone and upends a body of law that has been

---

[8]      In a dissent, Justices Thomas and Alito, while agreeing with the majority's
conclusion that *Chevron* deference was not owed to the DOL's position, concluded that
the exemption of section 213(b)(10)(A) should categorically be construed to cover the
service advisors in that case noting that "[s]ervice advisors are 'primarily engaged in . .
. servicing automobiles', given their integral role in selling and providing vehicle
services." *Navarro*, 136 S. Ct. at 2129-31 (Thomas, J., dissenting).

settled for more than forty years, notwithstanding the DOL's 2011 interpretive shift.[9]

The rationales leading courts in such cases as *Deel Motors* and *Greenbrier Ford* to conclude that service advisors were intended by Congress to be within the scope of the section 213(b)(10)(A) exemption is compelling. Service advisors represent an integral part in a dealership's servicing of automobiles. *Deel Motors*, 475 F.2d at 1097; *Greenbrier Ford*, 370 F.3d at 453. The job description associated with plaintiff's position reveals that in her role as a service advisor she fulfilled this integral role, providing as follows:

> The Service Advisor functions as a liaison between technicians and customers concerning all repairs of the customer's vehicle maintaining communications with the customer and the technician

Dkt. No. 16-4 at 1. That in her position, plaintiff was in essence selling services is further confirmed by her own affidavit, in which she states:

> As a Service Advisor I was responsible for meeting with customers who brought their vehicles in for service, receiving their vehicles and performing administrative intake tasks, and attempting to sell additional services to those customers.

---

[9]     The Supreme Court has again granted *certiorari* in *Navarro*, and today heard argument regarding whether service advisors are exempt under 29 U.S.C. §213(b)(10)(A).  *See Navarro v. Encino Motorcars, LLC*, 138 S. Ct. 54 (2017).

Dkt. No. 15-3 at 2. And, consistent with the underpinnings of the exemption, plaintiff was not paid on a straight hourly basis, but instead a salary that was dependent to a large extent on commissions. *Id.* at 2-3. This is a fact that distinguishes the present circumstances from such cases as *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 383 (E.D.N.Y. 2010). In that case, the court concluded that the section 213(b)(10)(A) exemption should not apply to the partsmen at issue since they were paid on an hourly rather than a commission basis, and worked regular hours. *Id.* at 390. In contrast, the plaintiff in this case was paid on commission basis and did not work regular hours, stating that she "worked in excess of forty hours practically every week that [she] worked . . .". Dkt. No. 15-3 at 2.

In sum, based upon the record now before the court, I recommend a finding that plaintiff's employment as a service advisor fell within the exemption of section 213(b)(10)(A), and that she was therefore not entitled to the overtime compensation that she now seeks.

C.    Supplemental Jurisdiction

Plaintiff's complaint includes a pendent state law claim under the NYLL. Although the exemptions recognized under the NYLL generally parallel those under the FLSA, defendants have not sought dismissal of

plaintiff's NYLL claim on the merits, instead urging the court to decline to exercise supplemental jurisdiction over those causes of action.

A federal court is authorized to decline supplemental jurisdiction over a state claim if all of the claims over which the court had original jurisdiction are dismissed. 28 U.S.C. § 1367 (c)(3); *see Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014); *Stephenson v. Albany Cnty. Policymakers*, No. 09-CV-0326, 2009 WL 2922805, at *2 (N.D.N.Y. Aug. 14, 2009) (Treece, M.J.), *report and recommendation adopted by* 2009 WL 3232294 (N.D.N.Y. Oct. 2, 2009) (Kahn, J.). A district court may, in its discretion, entertain supplemental jurisdiction over state law claims, even where all federal causes of action have been dismissed, to further "'fairness' or 'judicial efficiency,' or to resolve any 'novel or unsettled issues of state law.'" *Trade Wind Distrib., LLC v. Unilux Ag*, No. 10-CV-5716, 2011 WL 4382986, at *8 (E.D.N.Y. Sep. 20, 2011) (quoting *Mauro v. S. New England Telecomms., Inc.*, 208 F.3d 384, 388 (2d Cir. 2000)). However, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the

remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988); *accord Kroshnyi*, 771 F.3d at 102.

In this case, I find that that the interests of judicial economy and efficiency would not be furthered if the court were to retain jurisdiction and adjudicate plaintiff's NYLL claim. Accordingly, I recommend that the court decline to exercise supplemental jurisdiction over that state law cause of action.

IV.     SUMMARY AND RECOMMENDATION

Plaintiff brings this action seeking overtime compensation for the time she spent as a service advisor working for defendants, and has requested the court certify this as a collective action under the FLSA. Because plaintiff's employment as a service advisor fell within the scope of a statutory overtime exemption set forth in section 29 U.S.C.  § 213(b)(10)(A), I recommend that defendants' motion for summary judgment be granted, that plaintiff's FLSA claim be dismissed, and that plaintiff's motions be denied on the basis of that determination. I further recommend that the court decline to exercise supplemental jurisdiction over plaintiff's New York Labor Law claim and that that claim be dismissed without prejudice.

Based upon the foregoing it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 16) be GRANTED and that plaintiff's claims in this action be DISMISSED, with prejudice with regard to plaintiff's FLSA claims but without prejudice in connection with her NYLL cause of action, and that plaintiff's motions for collective action certification (Dkt. No. 15) and for summary judgment (Dkt. No. 18) be DENIED on the basis of this determination.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      January 17, 2018
            Syracuse, NY